UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

TRINA DULANEY,

            Plaintiff,

    vs.

MICHAEL SANDONA, et al,

            Defendants.

No. CV-13-036-JLQ

ORDER GRANTING DEFENDANT SANDONA'S MOTION TO DISMISS AND DIRECTING ENTRY OF JUDGMENT PURSUANT TO FED.R.CIV.P. 54(B)

**BEFORE THE COURT** is Defendant Michael Sandona's Motion to Dismiss (ECF No. 14), which Plaintiff opposes. On May 24, 2013, the court heard telephonic oral argument. Michael McFarland appeared on behalf of Defendant Sandona and Peter Jones represented Plaintiff, Trina Dulaney. At the hearing and by Order, the court ordered the parties to file supplemental briefs. (ECF No. 26). Defendant Sandona filed a supplemental brief (ECF No. 26) and affidavit (ECF No. 27). Plaintiff did not file a supplemental brief. For the reasons discussed below, the court grants Defendant's Motion.

**I.  BACKGROUND**

    **A.  Summary of Allegations in the Complaint**

This case arises from the alleged failure to provide Plaintiff with notice of an initial shelter care hearing following the temporary removal of Plaintiff's then four-year old child from her custody. In the Complaint (ECF No. 2), Plaintiff alleges that in December 2009, Ferry County Child Protective Services received a complaint from a paraeducator concerned about Plaintiff's child coming to school overmedicated. A state

ORDER - 1

social worker for the Washington State Department of Health Services, Defendant Cheryl Grimm, made a home visit on December 8, 2009 and discussed with Plaintiff the Department's concerns regarding the safety of the child. (ECF No. 2 at ¶3.3). Plaintiff alleges as she "was uninterested in working with the Department," (¶ 3.3) Grimm had a Ferry County deputy arrange a meeting with Plaintiff and her child. *Id*. at ¶3.4. Plaintiff voluntarily brought her child to the meeting at which time she was separated from her child. *Id*. Upon being informed her child was being taken into state custody, Plaintiff tried to leave the room and pushed a table, striking Grimm. *Id.* at ¶3.9. As a result, Plaintiff was arrested and charged with assault. *Id.* at ¶3.09. Plaintiff had a history of mental illness and at the time of her arrest was on release from Eastern State Hospital on a Least Restrictive Alternative Agreement. *Id.* at ¶3.10. The allegations of assault were sufficient to revoke her release and she was returned to Eastern State Hospital on Friday, December 18, 2009. *Id.* at ¶3.13.

The Complaint alleges that on the following Monday, December 21, 2009, Defendant Michael Sandona, "in his office as Ferry County Prosecutor, noted a shelter care hearing for that same day." *Id*. at 3.13.  Plaintiff claims the Defendants failed to provide her the required notice under state law, RCW 13.34.062, and as a result she had no notice of the shelter care hearing and did not attend the hearing allegedly held December 21, 2009. *Id.* at ¶¶3.14-3.15, 3.16.

Proceeding under 42 U.S.C. § 1983, Plaintiff claims Defendant Sandona violated her right to procedural due process and right to parent by 1) depriving her of the right to be heard at the shelter care hearing on December 21, 2009 (¶ 4.4); 2) by failing "to serve Plaintiff prior to appearing for a shelter care hearing" (¶ 3.17); and 3) "failing to make any effort to permit her to participate in the shelter care hearing held on December 21, 2009" (¶3.18).   In support of her Complaint, Plaintiff relies upon a provision of Washington State law, RCW 13.34.062, which provides that when a child is taken into custody, provides that within 24 hours "child protective services shall make reasonable

ORDER - 2

efforts to inform the parent...of the fact that the child has been taken into custody, the reasons why the child was taken into custody, and their legal rights under this title, including the right to a shelter care hearing, as soon as possible."

Washington law also provides that after a child is taken into custody, "the court shall hold a shelter care hearing within seventy-two hours, excluding Saturdays, Sundays, and holidays." RCW 13.34.065.  At the shelter care hearing the court is required to inquire as to whether notice was provided pursuant to the aforementioned statute, RCW 13.34.062, and if it was not, the court is required to "order the department to make reasonable efforts to advise the parent...of the status of the case, including the date and time of any subsequent hearings, and their rights..." RCW 13.34.062(4)(a).

**B. Procedural History**

Defendant Sandona moved to dismiss the claims in the Complaint, arguing that he is entitled to absolute prosecutorial immunity.  (ECF No. 14). The court heard telephonic oral argument on May 24, 2013.  At the hearing, Plaintiff's counsel asserted the child was taken into custody on December 8, 2009 and that Plaintiff's claims against Sandona were in part based upon the failure to timely hold a shelter care hearing.  As no date of the removal of the child was pleaded, the court directed counsel to confer regarding the relevant dates and file supplemental briefing on this issue. Plaintiff did not file a supplemental brief on that issue. However, Defendant Sandona's Supplemental brief states that after the telephonic hearing Defendant's counsel conferred with Plaintiff's counsel and they agreed that the meeting with Ms. Grimm and the deputy sheriff took place on Friday, December 18, 2009, the child was signed into custody on December 18, 2009, that a dependency petition was signed and filed on December 21, 2009, and a shelter care hearing was held on Tuesday, December 22, 2009. (ECF No. 26 at 2).  These dates were confirmed in ECF No. 28 *[Plaintiff's Memo in Opp. to Grimm SJ]* at 1-2("A close examination of the record reveals that counsel was in error. Ms. Dulaney now stipulates that the seizure of the child happened on December 18, 2009, not

ORDER - 3

December 8, 2009) .

## II.   LEGAL STANDARD

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court must also assume that "general allegations embrace those specific facts that are necessary to support a claim." *Smith v. Pacific Props. & Dev. Corp.*, 358 F.3d 1097, 1106 (9th Cir. 2004). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant a fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. *Id*. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Dismissal under Rule 12(b)(6) is appropriate if an affirmative defense or other bar to relief is apparent from the face of the Complaint, such as the absolute immunity of a defendant. *Imbler v. Pachtman*, 424 U.S. 409, 430–31(1976).

## III.   DISCUSSION

Defendant Sandona contends he is entitled to absolute prosecutorial immunity against Plaintiff's claims. The Supreme Court has held that "the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985). Therefore, immunity is

ORDER - 4

an issue which should be resolved as early in the proceedings as possible.

Absolute immunity is a personal defense potentially available in a § 1983 action against a prosecutor in his individual capacity. *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985)(absolute immunity is a personal defense that is unavailable in an official-capacity action). In *Imbler v. Pachtman*, the U.S. Supreme Court first held that absolute immunity protects prosecutors for certain acts they perform that are closely associated to the judicial process. 424 U.S. 409, 430 (1976). The extension of the immunity doctrine to prosecutors arises out of the general "concern that harassment by unfounded litigation" could both "cause a deflection of the prosecutor's energies from his public duties" and also lead the prosecutor to "shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler*, 424 U.S. 409, 423 (1976). While "[p]rosecutors performing their official prosecutorial functions are entitled to absolute immunity against constitutional torts," *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 912 (9th Cir. 2012), it is only when a prosecutor acts outside of his role as an advocate that absolute immunity does not extend to his acts. *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) ("[A]bsolute immunity may not apply when a prosecutor is not acting as 'an officer of the court,' but is instead engaged in other tasks, say, investigative or administrative tasks.")." In *Burns v. Reed*, 500 U.S. 478 (1991), the Court concluded that a prosecutor is not entitled to absolute immunity when acting as an administrator or investigator, for example, when a prosecutor gives legal advice to police.

In determining whether particular claims against a prosecutor are barred, the court accepts the Plaintiff's factual allegations as true, and then considers the "nature of the function performed, not the identity of the actor." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). The prosecutor's motive or intent is irrelevant. *See McCarthy v. Mayo*, 827 F.2d 1310, 1315 (9th Cir. 1987). The prosecutor bears the burden of showing that immunity is justified for the function in question.

ORDER - 5

The allegations in the Complaint against Sandona concern alleged inaction regarding service of process and noticing a hearing. Assuming without deciding (as the legal merit of Plaintiff's claims were not argued) that *Sandona* owed Plaintiff a duty to serve her or otherwise provide notice of the shelter care hearing, these functions are intimately associated with the lawyering role of a prosecutor and relate to the advocate's preparation for the initiation of judicial proceedings falling within a prosecutor's role as an officer of the court. Giving notice to the parties involved is one of those core prosecutorial functions which is protected by absolute immunity. *See Pusey v. City of Youngstown*, 11 F.3d 652 (6th Cir. 1993)(prosecutor's failure to notify murder victim's mother of a change of plea hearing was intimately associated with the judicial phase of the criminal process).

Plaintiff has not argued that these functions by Defendant Sandona fall under an investigative or administrative realm. Rather, Plaintiff contends Sandona is not entitled to immunity because his inaction occurred "outside the judicial process" and prior to judicial involvement or oversight in the matter. However, immunity protects all functions in which the prosecutor acts as an advocate for the State, even if they "involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Burns v. Reed,* 500 U.S. 478, 486 (1991). Plaintiff's citation to *Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) is distinguishable as *Lacey* involved an evidence gathering function associated with the issuance of subpoenas, which is factually inapposite to the advocacy-related function of providing notice alleged here.

The court concludes Defendant Sandona is entitled to absolute immunity against Plaintiff's claims alleged in the Complaint against him. This decision is consistent with precedent recognizing the inherent sensitivity of child custody proceedings and, relatedly, the special need to protect judicial officers in their attempts to facilitate these proceedings. *See e.g., Meyers v. Contra Costa County Dept. of Soc. Servs.*, 812 F.2d 1154, 1157 (9th Cir.1987) (extending absolute immunity to the social worker in

ORDER - 6

connection with the initiation and pursuit of child dependency proceedings."); *Ernst v. Child and Youth Services of Chester County*, 108 F.3d 486, 495 (3d Cir.), cert. denied, 522 U.S. 850 (1997)(recognizing the heightened need for absolute immunity for official responsibilities in child custody proceedings, where aggrieved parents are "likely to be even more resentful of state interference").

## IV.  CONCLUSION

For the foregoing reasons, Defendant Sandona's Motion to Dismiss Defendant Sandona (ECF No. 14) is **GRANTED**.  Dismissal without leave to amend is proper as Plaintiff has not identified any basis upon which the claims in the Complaint against Defendant Sandona could be saved by amendment.  *Intri–Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007).  Because there is no just reason for delay, the court directs the Clerk of the Court to enter Judgment in favor of Defendant Sandona dismissing all claims in the Complaint against Defendant Sandona with prejudice, without costs to any party, and terminate Michael Sandona from the docket.

The Clerk shall enter this Order and Judgment as directed above, and furnish copies to counsel

Dated June 5, 2013.

                    s/ Justin L. Quackenbush
                    JUSTIN L. QUACKENBUSH
            SENIOR UNITED STATES DISTRICT JUDGE