UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TRINA DULANEY,<br><br>            Plaintiff,<br><br>vs.<br><br>CHERYL GRIMM, AND DEPARTMENT OF SOCIAL AND HEALTH SERVICES for the STATE OF WASHINGTON,<br><br>            Defendants. | No. CV-13-036-JLQ<br><br>ORDER GRANTING DEFENDANTS' GRIMM AND STATE OF WASHINGTON'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** is Defendants Cheryl Grimm and the Department of Social and Health Services for the State of Washington's Motion for Summary Judgment (ECF No. 19), which Plaintiff concedes in part and opposes in part. Defendants Grimm and the Department are the sole remaining Defendants after the court dismissed the claims against Defendant Michael Sandona, a county prosecutor, on June 5, 2013. (ECF No.29). In her Response to the Defendants' Motion, Plaintiff cross-motions the court for partial summary judgment on the issue of Defendant Grimm's liability. For the reasons which follow, the court GRANTS the Defendants' Motion for Summary Judgment.

## I.   BACKGROUND

The factual underpinnings of this case relate to the admitted failure of Defendant Grimm to provide Plaintiff, who was hospitalized at the time for mental illness, pre-hearing notice of an emergency initial shelter care hearing following the state's removal of Plaintiff's 4 ½ year old child from her care. Plaintiff concedes the facts set forth by Defendants in their Statement of Material Facts are undisputed and has proffered no

ORDER - 1

evidence of her own in opposition to the Motion. See ECF No. 28; LR 56.1(d).

**A. The Initiation Of The Child Protection Investigation**

The events set forth herein took place in Republic, Washington, a relatively small town (1,000) in north central Washington close to the Canadian border and 124 miles from Spokane, Washington. On December 4, 2009, the Washington State Department of Social and Health Services ("the Department") received a complaint from the preschool teacher of Plaintiff Trina Dulaney's then four-year old child, K.C.D., that he was coming to school overmedicated and with pants wet from his own urine. (Declaration of Cheryl Grimm (Grimm Decl.) at 2:3-5). This complaint was assigned to the Department's Social Worker, Cheryl Grimm, to investigate. (Grimm Decl. at 2:5-6). On December 8, 2009, Ms. Grimm visited the Dulaney home. (Grimm Decl. at 2:7). Ms. Grimm tried to communicate the concerns the Department had regarding K.C.D. and what services the Department could offer the family. (Grimm Decl. at 2:7-9). Ms. Dulaney was not interested in working with the Department. (ECF No. 2 at 9:2-3). Ms. Grimm learned during the course of this conversation that K.C.D.'s biological father was deceased. (Grimm Decl. at 2:10-11). At the end of the conversation, Ms. Dulaney's boyfriend, Timothy Bierbaum told Ms. Grimm: "You will need a gun if you come here to take him." (Grimm Decl. at 2:12-13). Ms. Grimm reported this statement to her supervisor and the Ferry County Sheriff. (Grimm Decl. at 2:14).

On December 15, 2009, Ms. Grimm presented K.C.D.'s case to the Republic Child Protection Team (CPT). (Grimm Decl. at 2:15-16). Ms. Grimm recommended not removing K.C.D. from the home. Although the CPT was very close to recommending removing K.C.D. from the home due to "huge safety factors," the CPT ultimately agreed with Ms. Grimm, recommending K.C.D. stay in the home under a voluntary agreement for services. (Grimm Decl. at 2:18-21, Ex. A). On December 16, 2009, Ms. Grimm left a voicemail with Ms. Dulaney requesting Ms. Dulaney to contact her. (Grimm Decl. at 3:2-3). Also on December 16, 2009, Ms. Grimm placed a call to law enforcement to

ORDER - 2

perform a well child check at the Dulaney residence. Grimm Decl. at 3:4-5. Due to staffing issues, law enforcement was unable to perform the well child check. (Grimm Decl. at 3:5-6).

On December 17, 2009, Ms. Grimm again left a voicemail with Ms. Dulaney and contacted law enforcement. Grimm Decl. at 3:7-8. Again, law enforcement was unable to check on K.C.D. (Grimm Decl. at 3:8-9). On December 17, 2009, Lorne Spooner, a Detective with the Ferry County Sheriff's Office, responded to a domestic violence complaint filed by Ms. Dulaney against Mr. Bierbaum. (Spooner Decl. at 1:21-22). In the course of responding to the domestic violence complaint, Detective Spooner informed Ms. Dulaney the Department was trying to get in touch with her and had requested the Sheriff's Office to check on her. (Spooner Decl. at 2:1-3). Ms. Dulaney told Detective Spooner that if the Department tried to get involved with K.C.D., she would take him and run away. (Spooner Decl. at 2:3-5). Ms. Dulaney indicated she would meet with the Department on <u>Friday</u>, December 18, 2009. (Spooner Decl. at 2:5-6).

### B. December 18, 2009 - The Child Removed; Plaintiff's Assaults and Hospitalization

On Friday, December 18, 2009, Ms. Grimm made contact with Detective Spooner. (Grimm Decl. at 3:10-11; Spooner Decl. at 2:7-8). Detective Spooner informed Ms. Grimm that he had made contact with Ms. Dulaney on the 17th. (Grimm Decl. at 3:11-13; Spooner Decl. at 2:8-9). Ms. Grimm informed Detective Spooner she needed to meet with the family due to the CPT recommendations of the 15th. (Grimm Decl. at 3:13-15; Spooner Decl. at 2:9-11). Detective Spooner indicated he would attempt to arrange a meeting. (Grimm Decl. at 3:15-16; Spooner Decl. at 2:11). Ms. Grimm asked Detective Spooner if he would be willing to sign K.C.D. into care. (Grimm Decl. at 3:16-17; Spooner Decl. at 2:12). Detective Spooner indicated he would discuss this with the Sheriff. (Grimm Decl. at 3:17-18; Spooner Decl. at 2:12-13).

On December 18, 2009 Detective Spooner located Ms. Dulaney and arranged for a meeting. (Grimm Decl at 3:19-20; Spooner Decl. at 2:14-15). Prior to the meeting, Detective Spooner signed a paper placing K.C.D. into care pursuant to RCW 13.32A.050. (Grimm Decl. at 3:21-22; Spooner Decl. at 2:16-17, Ex. C). During the meeting in the Mental Health conference room in Republic, Washington, K.C.D. was placed in a separate room, and Ms. Grimm informed Ms. Dulaney he had been temporarily taken into protective custody. (Grimm Decl. at 4:1-3; Spooner Decl. at 2:20-22). Upon hearing this news, Ms. Dulaney became irate, picked up the table, and slammed it into Ms. Grimm. (Grimm Decl. at 4:4-5; Spooner Decl. at 3:1-2). Ms. Dulaney then physically challenged another Sheriff's Deputy in the room. (Grimm Decl. at 4:5-6; Spooner Decl. at 3:3-4). After being instructed to sit, Ms. Dulaney sat down and began banging her head against the table. (Spooner Decl. at 3:5-6). When the deputies moved the table away from her, she stood up and began banging her head on the wall. (Spooner Decl. at 3:7-8) . At this point, she was restrained for her own protection. (Spooner Decl. at 3:9). An ambulance was called in order to have Ms. Dulaney's injuries checked. (Spooner Decl. at 3:10-11). While awaiting the ambulance, Ms. Dulaney attempted to bite the deputy. (Spooner Decl. at 3:12). Ms. Dulaney then made a threat against the teacher who called in the complaint, saying, "When I get out of here, I am going to go kill that fucking teacher who did this." (Spooner Decl. at 3:13-15). After she was told she didn't want to do that, Ms. Dulaney replied, "Oh yes I do." (Spooner Decl. at 3:16-17). Ms. Dulaney was taken to Republic Hospital and then was transported to the psychiatric ward at Sacred Heart Hospital in Spokane, Washington. (Grimm Decl. at 4:8-9; Spooner Decl. at 3:16-17).

**C.  The December 22, 2009  Shelter Care Hearing**

A dependency petition was filed in Ferry County Superior Court on Monday, December 21, 2009. (Grimm Decl. at 4:10-12, Ex. B; Declaration of Jason D. Brown (Brown Decl.), Ex E). A shelter care hearing was held on Tuesday, December 22, 2009.

ORDER - 4

Ms. Dulaney was not present, as she was still hospitalized at Sacred Heart Hospital in Spokane. Grimm Decl. at 4:22-5:1. On December 18, 2009, the day the child was taken into custody, Ms. Dulaney had been informed in person by Ms. Grimm that K.C.D. was being removed from his home due to the Department's concerns for his well-being. However, Ms. Dulaney never received the formal notice required by state law prior to the December 22, 2009 hearing. Grimm claims that her opportunity to provide notice to Ms. Dulaney in-person ended because Dulaney became combative, hostile and required hospitalization. Grimm also states in her Declaration that her "area administrator made attempts to get Ms. Dulaney served at Sacred Heart Hospital," but does not state when or how. The summary judgment evidence does not include a declaration of Grimm's area administrator.

The December 22, 2009 hearing resulted in a "Shelter Care Hearing Order" authorizing continued foster care until a hearing could be held to determine whether the child was a dependent child under RCW 13.34.030(6). (Brown Decl., Ex. F). The order also appointed counsel to represent Ms. Dulaney's interests, appointed a guardian ad litem for K.C.D. and set another shelter care hearing for January 15, 2010. (Brown Decl., Ex. F). Notably, the check-box court Order includes Findings at ¶ 2.1 that Grimm/DSHS "gave adequate notice as required by RCW 13.34.062 to the mother" and that Grimm/DSHS "has made reasonable efforts to provide notice to the mother..."

A social worker other than Defendant Grimm was assigned to handle the dependency case as of December 31, 2009. (ECF No. 22, Grimm Decl. ¶ 23)

**D  January 2010 - Plaintiff's Notice and Opportunity to be Heard**

On January 19, 2010, with the assistance of her attorney, Glenn Slate, Ms. Dulaney filed a Notice of Tort Claim with the State of Washington. The Addendum to the Notice of Tort Claim, dated January 13, 2010, states that Ms. Dulaney was not notified until January 12, 2010 that a shelter care hearing had occurred and her right to a subsequent hearing. (Brown Decl. at 3:17-18, Ex. L). Through counsel, Ms. Dulaney

ORDER - 5

Case 2:13-cv-00036-JLQ    Document 34    Filed 07/29/13

also moved the Ferry County Superior Court to dismiss the dependency petition, based on the lack of notice. (Brown Decl. at 2:12-13, Ex. G). A dependency hearing was held before Superior Court Judge Rebecca Baker on January 22, 2010. The Plaintiff and her attorney were present. The court held that the "Department failed to give notice to Mother of the Shelter Care Hearing," which it noted "is not acceptable," but denied the requested dismissal of the dependency petition. (Brown Decl. Exs. G, H). This shelter care hearing resulted in a new Shelter Care Hearing Order being entered, continuing the child in foster care due to the risk of imminent harm to the child and unsafe conditions in the home. (Brown (Decl., Ex. H)). In the court's Order Judge Baker noted Ms. Dulaney's "inability to manage her own behavior in the courtroom during these proceedings." Ms. Dulaney filed an interlocutory appeal of the order denying her motion to dismiss. (Brown Decl. at 2:21-22). The Washington Court of Appeals declined to hear her appeal. (Brown Decl. at 2:22-3:2, Ex. I).

An order finding K.C.D. dependent under RCW 13.34.030(6)(b) (child has been abused or neglected) and (c) (child has no parent capable of adequately caring for the child), was entered March 26, 2010. (Brown Decl. at 3:6-8, Ex. J). Ms. Dulaney unsuccessfully appealed that Order. (Brown Decl. at 3:11). The Plaintiff's Complaint alleges the child remained in state custody for "almost two years." (ECF No. 2).

### E. Procedural History

On December 21, 2012, Ms. Dulaney filed this civil rights action in Ferry County Superior Court against the Ferry County Prosecutor, Michael Sandona, Cheryl Grimm and her employer, the Washington State Department of Social and Health Services. The Complaint seeks to recover under 42 U.S.C. § 1983 for violations of her procedural due process and parental rights by the Defendants' failure to provide her the timely notice of the December 22, 2009 Shelter Care hearing while she was hospitalized in Spokane for mental illness.

Defendants removed this action to court on January 22, 2013. (ECF Nos. 1, 2).

ORDER - 6

On June 5, 2013, the court granted Sandona's Motion to Dismiss, ruling that Sandona was entitled to absolute prosecutorial immunity against Plaintiffs' claims against him. The court held that any duty the prosecutor allegedly owed to serve or otherwise provide notice of the shelter care hearing was intimately associated with the lawyering role of a prosecutor and the preparation for the initiation of judicial proceedings. (ECF No. 29 at 6).

Grimm and the Department moved for summary judgment on May 28, 2013. In her Response to the Motion for Summary Judgment, Plaintiff cross-motions the court for partial summary judgment on the issue of Grimm's liability in her individual capacity.

**II. State Law Re: Notice Following Emergency Removal of Children**

Washington law permits children to be taken into custody by law enforcement but may not be held without a court order for longer than 72 hours, excluding Saturdays and Sundays, and Holidays. WASH. REV. CODE 13.34.060. Wash.Rev.Code 13.34.062 provides that when a child is taken into custody in this manner:

> child protective services shall make reasonable efforts to inform the parent...of the fact that the child has been taken into custody, the reasons why..., and their legal rights under this title, including the right to a shelter care hearing, as soon as possible....In no event shall the notice required by this section be provided to the parent...more than twenty-four hours after the child has been taken into custody...

Wash. Rev. Code 13.34.062. The notice required by Wash. Rev. Code 13.34.062 can be given "by any means reasonably certain of notifying the parents including, but not limited to, written, telephone, or in person oral notification." WASH.REV.CODE 13.34.062(2)(a). If the initial notice of provided by means other than in writing, "child protective services shall make reasonable efforts to also provide written notification." WASH.REV.CODE 13.34.062(2)(a). The statute sets forth a form written notice detailing a number of very important rights including the date of the hearing, the right to attend and be heard personally or through counsel, and the right to have an attorney appointed. WASH.REV.CODE 13.34.062(2)(b).

ORDER - 7

The "reasonable effort" to advise and give this notice is statutorily defined to include, at minimum, an investigation of the whereabouts of the parent. WASH.REV.CODE 13.34.062(4). "[I]f after making reasonable efforts to provide notification, child protective services is unable to determine the whereabouts of the parents...then notice shall be delivered or sent to the last known address." *Id*.

### III. SUMMARY JUDGMENT STANDARD

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.* When parties submit cross-motions for summary judgment, as here, the Court must consider each motion on its own merits. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). In addressing the parties' cross-motions for summary judgment, the court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 255 (1986). Nevertheless, the non-moving party "may not rest upon the mere allegations or denials of his pleading, but...must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 248. Factual assertions in the moving party's affidavits may be accepted as true unless the opposing party submits its own evidence to the contrary.

### IV. ANALYSIS

**A. Claims against the Department of Social and Health Services and Grimm (acting in her official capacity)**

Plaintiff names the state Department of Social and Health Services as a Defendant. As the moving Defendants contend in their Motion, state entities are not "persons" for purposes of liability under 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491

ORDER - 8

U.S. 58, 66 (1989). Though the Complaint does not explicitly mention the capacities in which Ms. Grimm is sued, state officials acting in their official capacities are also not "persons" under §1983. *Maldonado v. Harris*, 370 F.3d 945, 951 (9th Cir.2004) (holding that neither a state agency nor state official sued in their official capacity are "persons" for purposes of 42 U.S.C. § 1983).

Plaintiff concedes this authority is binding on this court and that the court must dismiss the claims against the State and Ms. Grimm in her official capacity.

**B.    Individual Capacity Claims against Defendant Grimm**

    **1.    Absolute Immunity**

Defendant Grimm claims she is entitled to absolute immunity against Plaintiff's claims. Grimm bears the burden of showing that immunity is justified.

The United States Supreme Court has stated that "the presumption is that qualified rather than absolute immunity is sufficient ... and [the Court] [has] been quite sparing in [their] recognition of absolute immunity." *Burns v. Reed*, 500 U.S. 478, 486-478(1991) (internal quotation marks and citations omitted). Among the few who traditionally receive absolute immunity are "judges, prosecutors, trial witnesses, and jurors." *Miller v. Gammie*, 335 F.3d 889, 896 (9th Cir. 2003). However, the Court has "recognized ... that some officials perform 'special functions' which, because of their similarity to functions that would have been immune when Congress enacted § 1983, deserve absolute protection from damages liability." *Buckley v. Fitzsimmons*, 509 U.S. 259, 268–69 (1993) (citation omitted). This immunity extends to individuals performing functions that are "critical to the judicial process itself." *Miller v. Gammie*, 335 F.3d 889, 896 (9th Cir.2003) *(citing Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).

The touchstone in determining whether absolute immunity applies is not the role or title of the official, but the nature of the specific function performed that allegedly gives rise to liability. Whereas a prosecutor is fully protected by absolute immunity when performing the traditional functions of an advocate, the scope of absolute immunity for

ORDER - 9

social workers is "extremely narrow." *Miller*, 335 F.3d at 898 (9th Cir. 2003). The Ninth Circuit has recognized that social workers perform some functions similar to those of a prosecutor and held that "[s]ocial workers have absolute immunity when they make discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents." *Beltran v. Santa Clara Cnty*., 514 F.3d 906, 908 (9th Cir.2008) (citation and internal quotation marks omitted); *see also Costanich v. Dep't of Social and Health Servs*., 627 F.3d 1101, 1115 (9th Cir. 2010). The rationale for according social workers absolute immunity for their bringing dependency proceedings is set forth in *Meyers v. Contra Costa Cnty. Dep't of Soc. Servs*., 812 F.2d 1154, 1157 (9th Cir. 1987):

> The social worker must make quick decision[s] based on perhaps incomplete information as to whether to commence investigations and initiate proceedings against parents who may have abused their children. The social worker's independence, like that of a prosecutor, would be compromised were the social worker constantly in fear that a mistake could result in a time-consuming and financially devastating civil suit.

To the extent, however, that social workers also make discretionary decisions and recommendations that are not functionally similar to prosecutorial or judicial decisions, only qualified, not absolute immunity, is available. Possible examples of social worker conduct falling *outside* the scope of quasi-prosecutorial activity includes giving direction to the parent to stay away from his home prior to the initiation of the dependency proceeding (*Meyers v. Contra Costa Cnty. Dep't of Soc. Servs.*, 812 F.2d 1154, 1157 (9th Cir.1987), or "decisions and recommendations as to the particular home where a child is to go or as to the particular foster parents who are to provide care." *Miller*, 335 F.3d at 898.

In this case the court notes that the allegations against Defendant Sandona, the prosecutor, and Defendant Grimm are distinct. The function involving Defendant Sandona was his alleged duty to serve Plaintiff with a notice of a court shelter hearing. The specific function allegedly giving rise to liability against Grimm, is her undisputed

ORDER - 10

statutory obligation to inform Plaintiff of her legal rights concerning the custody status of her child, including the shelter care hearing. Providing the specific notice to the parents required under Washington law is not a discretionary act. Wash.Rev.Code 13.34.062 (the social worker "shall make reasonable effort to inform the parent...of...their legal rights...[and][i]n no event shall the notice...be provided to the parent...more than twenty-four hours after"). This statutorily mandated function is not akin to the discretionary decision to commence dependency investigations and initiate proceedings for which the Ninth Circuit has narrowly afforded social workers absolute immunity. *See e.g., Murray v. Andrade*, 405 Fed.Appx. 171 (9th Cir. 2010 (unpublished)(reversing the district court's grant of summary judgment to social worker on the basis of absolute immunity for the alleged failure to provide notice to parent of dependency proceedings). The court determines Defendant Grimm is not entitled to absolute immunity in this case.

### 2. Qualified Immunity

#### a. Qualified immunity standard

Alternatively, Defendant Grimm contends she is entitled to qualified immunity. "Qualified immunity was created to shield government officials from civil liability for the performance of discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Atwater v. City of Lago Vista*, 532 U.S. 318, 367 (2001) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Under *Saucier v. Katz*, 533 U.S. 194, 200 (2001), the court must evaluate whether, viewed in the light most favorable to plaintiff, the facts alleged show that the social worker's actions violated a constitutional right. If they did, the court evaluates whether the constitutional right was "clearly established" such that it would have been clear to a reasonable social worker that the conduct was unlawful. *Id.* at 201-02. " To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what [s]he is doing violates that right. " *Reichle v. Howards*, ––– U.S. ––––, 132 S.Ct. 2088, 2093, (2012)). This second inquiry

ORDER - 11

"must be undertaken in light of the specific context of the case, not as a broad general proposition...." *Saucier*, 533 U.S. at 201.

**b. Substantive and Procedural Due Process**

Initially, the court notes that Plaintiff does not present a challenge to the constitutionality of any state statute. Rather, the Complaint alleges Defendant Grimm violated state law, as well as the Constitution, by failing to provide Plaintiff the state-required notice of her legal rights, including notice of the December 22, 2009 shelter care hearing. Plaintiff alleges Grimm violated her procedural due process and substantive due process rights, which arise under the Fourteenth Amendment. (ECF No. 2 at 12 (¶ 4.5).

*i. Liberty Interest*

The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." " Choices about marriage, family life, and the upbringing of children are among associational rights [the Supreme] Court has long ranked as 'of basic importance in our society,' ... rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard or disrespect. " *M.L.B. v. S.L.J.*, 519 U.S. 102, 116, (1996). The Supreme Court has recognized that parents have substantive due process right and constitutionally protected liberty interest "in the care, custody, and management of their children," *Id.* "'Far more precious than property rights,' parental rights have been deemed to be among those 'essential to the orderly pursuit of happiness by free men,' and to be more significant and priceless than 'liberties which derive merely from shifting economic arrangements.' " *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 38 (1981) (Blackmun, J., dissenting) (quoting multiple Supreme Court cases) (individual citations omitted).

However, the liberty interest in familial relationships does not include a constitutional right to be free from child abuse investigations, as the state has a strong interest in protecting the safety and welfare of minor children. These competing interests require the court to balance the interests of the state and the children against the interests

ORDER - 12

of the parent in determining whether a constitutional violation has occurred. *U.S. v. Wolf Child*, 699 F.3d 1082 (9th Cir. 2012).

   *ii. Substantive Due Process*

Under the Fourteenth Amendment, only conduct that "shocks the conscience" is cognizable as a substantive due process violation. The threshold question is "whether the behavior of the government officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998).

   *iii. Procedural Due Process*

An individual must ordinarily be afforded "the opportunity to be heard 'at a meaningful time and in a meaningful manner' " before any intrusion upon a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (*quoting Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In those "extraordinary situations" where deprivation of a protected familial liberty interest is permitted without prior process, such as when taking endangered children into custody, the constitutional procedural due process requirements of notice and an opportunity to be heard are not eliminated, but merely postponed. *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971). When the state removes a child from his parent, due process guarantees a prompt and fair *post-deprivation* judicial review.

What constitutes due process is rooted in the circumstances of the case. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, (1972). The requirement that parties be notified of proceedings affecting their legally protected interests "is obviously a vital corollary to one of the most fundamental requisites of due process-the right to be heard. 'This right... has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest.'" *Schroeder v. City of New York*, 371 U.S. 208 (1962)(quoting *Mullane v. Central Hanover*

ORDER - 13

*Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

The notice that due process requires "must be of such nature as reasonably to convey the required information...and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met[,] the constitutional requirements are satisfied." *Mullane*, 339 U.S. at 314-315. "The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes." *Id*. at 315.

Accordingly, the touchstone of constitutionally adequate notice is reasonable efforts reasonably calculated, under all the practicalities of the situation, to actually inform a party of the pendency of the deprivation of a protected interest.

*iv. Deliberate Decision Required*

For both substantive and procedural due process, "this guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 331 (1986)(emphasis added). Because the Due Process Clause serves to protect people from abuses of power, in *Daniels v. Williams*, 474 U.S. 327, 328 (1986), the Court held that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property."

**c.    Defendant Grimm is Entitled to Qualified Immunity**

Plaintiff contends her due process rights were violated because she was afforded no notice of her important legal rights applying to the initial emergency shelter care hearing , prior to the time of that initial hearing held on December 22, 2009 and while she

ORDER - 14

was hospitalized in a psychiatric ward in Spokane, Washington. In light of *Mullane's* test requiring reasonable certainty of actual notice, Defendant Grimm focuses upon the practicalities and peculiarities of this specific case. Providing Plaintiff in-person notice of her legal rights prior to the emergency shelter care hearing on December 18, 2009 when the child was initially placed in temporary custody became impracticable when Plaintiff stood up, grabbed a table, slammed it into Grimm, attempted to bite the law enforcement officer, and engaged in other self-destructive behavior. Plaintiff's volatile and hostile behavior ended the meeting with Grimm, necessitated Plaintiff's restraint in handcuffs by law enforcement, and transport by ambulance to the psychiatric ward hospital in Spokane some 124 miles from Republic.

Plaintiff's Response in Opposition to the Motion for Summary Judgment alleges Grimm could have delivered notice in writing or by telephone. This position ignores the impracticalities, if not the impossibility, of attempting to directly contact a psychiatric patient in a distant hospital. Despite this, the record indicates Grimm's administrator made (apparently unsuccessful) "attempts to get Ms. Dulaney served at Sacred Heart Hospital" in Spokane. (ECF No. 22, ¶ 21). If Plaintiff had received notice and had access to a telephone while hospitalized (as the Response suggests) she might have inquired of her lawyer, the court, or the state agency and tried to remedy the breakdown in communication occasioned by her behavior and hospitalization. She was already aware that her child had been taken into protective custody. Defendant Grimm knew Plaintiff was the sole surviving parent of the child. There is no suggestion that the prompt mailing of the notice to Plaintiff's residence would have been reasonably calculated to reach Plaintiff prior to the December 22, 2009 hearing, where Plaintiff was hospitalized the entire time. Plaintiff's Response concedes "it is most likely true that it was difficult to give such notice at the time..." (ECF No. 32 at 5).

The conditions created by Plaintiff did not reasonably permit the prompt notice and opportunity to be heard ordinarily due to a parent in these circumstances. The court

ORDER - 15

concludes the failure of Grimm to provide Plaintiff notice between December 18, 2009 and the initial Shelter Care hearing on December 22, 2009 was far from the *deliberate* abuse of power the Due Process Clause serves to protect from, but rather, in the light most favorable to Plaintiff, at most suggests a negligent failure to comport with the letter of the state law. Furthermore, the initial Shelter Care hearing and resulting Shelter Care Order was preliminary and did not finally adjudicate Plaintiff's right to custody or ability to care for her child. After Plaintiff's discharge from the hospital, Plaintiff was afforded notice and the opportunity to be heard at the Shelter Care hearing held a few weeks later on January 22, 2010.

Even if it could be said that a due process violation occurred in the circumstances shown in the record, which the court does not conclude, the law would not have put a reasonable officer on notice that her conduct was clearly unlawful. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Though the right to due process of law is quite clearly established, qualified immunity must not be denied unless the law is clear in the more particularized sense that a reasonable official would be on notice that her conduct is unlawful. In this case where the need to protect children is the basis for emergency action, due process requires there be a reasonable effort made to give notice of post-deprivation remedies reasonably calculated to reach the parent. Where a parent's circumstances, such as hospitalization, makes such notice impracticable, if not impossible, and where subsequent shelter care hearings were held, it would not be clear to a reasonable officer in this situation that the failure to provide notice prior to the emergency hearing was unlawful..

Accordingly, Defendant Grimm is entitled to qualified immunity.

## V.     CONCLUSION

For the foregoing reasons, Defendant Grimm and the State Department of Social and Health Service's Motion for Summary Judgment (ECF No. 19) is **GRANTED**.

The Clerk shall enter this Order, enter **JUDGMENT** dismissing with prejudice the

ORDER - 16

Complaint (ECF No. 2) and the claims therein, provide copies to counsel, and **CLOSE THE FILE**.

DATED this 29th day of July, 2013.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 17